Clerk's Office
Filed Date: 5/1/23

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

JAMES HUNTER,

                              Petitioner,           **MEMORANDUM & ORDER**
                                                       19-CV-1321 (MKB)

         v.

ANTHONY J. ANNUCCI,

                            Respondent.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Petitioner James Hunter, proceeding *pro se*,[1] brings the above-captioned action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Pet., Docket Entry No. 1.) Petitioner's claims arise from a judgment of conviction in New York Supreme Court, Kings County (the "Trial Court"), for assault in the first degree under New York Penal Law ("N.Y.P.L.") § 120.10(1). (Pet. 1, 5.)

      Petitioner seeks a writ of habeas corpus on the following grounds: (1) he was denied constitutional and statutory rights, including his right to a fair trial and his right to effective assistance of counsel, because the Trial Court improperly handled a jury note; (2) he was unfairly

---

[1] Petitioner is no longer incarcerated, having been released on November 23, 2021. (*See* Notice of Change of Address dated Nov. 23, 2021, Docket Entry No. 24.) However, because Petitioner filed his Petition while he was in custody, (*see* Pet.), and is still subject to conditions of supervised release, (*see* Appellant's Brief to App. Div. Brief ("Appellant's App. Div. Brief") 2, annexed to Resp't Letter with Briefs and Exs. as Ex. 1, Docket Entry 18-1 (explaining that Petitioner was sentenced to a twelve-year term of imprisonment and five years of post-release supervision)), the petition is not moot. *See Nowakowski v. New York*, 835 F.3d 210, 216–18 (2d Cir. 2016) (explaining that a federal court has jurisdiction over a federal habeas case so long as the petition is filed while the petitioner is serving his sentence, including the period of post-release supervision, and the case is only moot once both the sentence has expired and no collateral consequence exists).

and arbitrarily denied his statutory right to testify at a grand jury proceeding, in violation of his

due process and equal protection rights; (3) he was denied his right to a grand jury indictment

and his right to fair notice of the charges against him because misleading evidence was provided

to the grand jury and the evidence presented at trial varied from that proof; (4) he was denied

effective assistance of appellate counsel because appellate counsel failed to raise the above

issues and also failed to raise a claim that the conviction was against the weight of the evidence.

(*See* Pet.)

For the reasons discussed below, the Court denies Petitioner's habeas petition.

## I.   Background

### a.   Factual background

On April 25, 2011, on the corner of Ditmas Avenue and East 22nd Street in Brooklyn,

New York, Petitioner stabbed Rodwell Jones (the "Victim") with a knife.  (Aff. of Keith Dolan

in Opp'n to Pet. ("Dolan Aff.") ¶ 5, Docket Entry No. 10.)  Petitioner admitted that he stabbed

the Victim but claimed he acted in self-defense.  (*Id.*)

#### i.   Grand jury proceeding and the indictment

Following Petitioner's arrest, Petitioner's attorney filed notice pursuant to New York

Criminal Procedure Law ("N.Y.C.P.L.") § 190.50(5), indicating that Petitioner wished to

exercise his right to testify at the grand jury proceeding.  (*Id.* ¶ 6.)  On April 29, 2011, both in

writing and on the record, Petitioner's attorney withdrew the notice of intent to testify before the

grand jury.  (*Id.*)  On April 29, 2011, the grand jury voted to indict Petitioner with first-degree

assault in violation of N.Y.P.L. § 120.10(1) and lesser included offenses.  (*Id.* ¶ 7.)  On May 12,

2011, the indictment was filed.  (*See* Indictment, *Hunter v. City of New York et al.*, No. 12-CV-

6139 (E.D.N.Y. Mar. 19, 2021), annexed to Brian Zapert Decl. as Ex. 17, Docket Entry No. 171-

17, at 3.)

### ii.    Motion to dismiss the indictment

On May 10, 2011, Petitioner filed a pro se motion to dismiss the indictment on the basis that his N.Y.C.P.L. § 190.50 right to testify before the grand jury had been violated.  (Dolan Aff. ¶ 8.)  Petitioner also claimed that, by denying him his right to testify, his attorney had denied him effective assistance of counsel and requested to have his attorney relieved.  (*Id.*)

On June 2, 2011, the Trial Court assigned new counsel to represent Petitioner and on July 27, 2011, newly assigned counsel adopted and prosecuted Petitioner's pro se motion.  (*Id.*)  On August 16, 2011, the Trial Court denied Petitioner's motion to dismiss the indictment and denied Petitioner's claim that he was denied effective assistance of counsel, finding that the attorney was permitted to withdraw his client's notice of intent to testify before the grand jury.  (*Id.*)

### iii.   Evidence at trial

Petitioner was tried before a jury in the New York Supreme Court, Kings County, before the Honorable Danny K. Chun, from September 6, 2012 through September 12, 2012.[2]

#### 1.    Petitioner's relationship with the Victim

Petitioner and the Victim lived in the same neighborhood and used to be friends.  (Tr. 25:1–18, 26:25–27:6.)  Sometime in 2006, the Victim became romantically involved with the mother of Petitioner's child, whom the Victim had met through Petitioner.  (*Id.* at 25:19–26:22.)

On April 24, 2011, the day before the offense, Petitioner called the Victim several times

---

[2] (Tr. of Trial Proceedings before the Hon. Danny K. Chun ("Tr."), annexed to State Ct. R. as Ex. 1, Docket Entry No. 5-1, at 201.)

from a blocked number,[3] and, according to the Victim, told the Victim that he "broke a cardinal rule" and "[was] a dead man walking." (*Id.* at 26:25–29:5.) That same day, a friend of both Petitioner and the Victim, Wisdom Davis, also received a phone call from Petitioner about the Victim's relationship with the mother of Petitioner's child and Petitioner told Davis "he was going to get [the Victim.]" (*Id.* at 109:8–110:4, 111:6–15.)

On April 25, 2011, at around 9:00 AM, the Victim noticed the windshield of his parked car was broken. (*Id.* at 29:14–30:12.) Suspecting that Petitioner broke the windshield, the Victim called Petitioner, who apologized and said he was going to compensate the Victim for the damages. (*Id.* at 30:13–31:18.)

At around 10:25 AM that same day, Davis spoke to Petitioner and asked him why he had smashed the Victim's windshield and suggested he compensate the Victim for the damages. (*Id.* at 111:21–112:2.) According to Davis, Petitioner replied that he would not compensate the Victim and insisted that "he [was] going to get [the Victim]" for having a relationship with the mother of his child. (*Id.* at 112:5–11.)

### 2. Stabbing incident

Sometime between 12:00 PM and 1:00 PM, Petitioner called the Victim and asked him to meet at the intersection of Ditmas Avenue and East 22nd Street, Brooklyn. (*Id.* at 32:1–16.) Between 1:00 PM and 1:30 PM, the Victim drove to the intersection and spotted Petitioner's vehicle but not Petitioner. (*Id.* at 33:4–25.) According to the Victim's testimony, he became upset at Petitioner for not showing up, and approached Petitioner's vehicle with a jack handle, intending to smash the windshield. (*Id.* at 34:19–35:7, 37:4–11.) As he approached, Petitioner

---

[3] Ricardo Leal, an employee with Sprint Nextel Corporation, testified to records pertaining to the phone calls on April 24 and April 25, 2011. (Tr. 169:3–196:13.)

4

emerged from the driver's side of the vehicle with a long knife and stated, "I got you now." (*Id.* at 37:22–38:15.) Petitioner "lung[ed]" toward the Victim with the knife, and the Victim swung the jack handle "to keep [Petitioner] from getting to [him]." (*Id.* at 39:19–40:19.) Petitioner pulled the jack handle from the Victim and stabbed the Victim four times in the abdomen.[4] (*Id.* at 41:3–8.) Petitioner then stabbed him in the left arm and he fell back, with Petitioner falling on top of him. (*Id.* at 42:11–14.) Petitioner pointed the knife toward the Victim's chest, and the Victim held onto Petitioner's knife-holding hand with both his hands to prevent the knife from going into his chest. (*Id.* at 41:15–42:5.) After people gathered around the scene stating, "you're going to kill that man," Petitioner got up and took the Victim's jack handle with him and left the scene. (*Id.* at 42:6–15.) The Victim was thereafter taken to Kings County Hospital, where he underwent emergency surgery and was hospitalized for about three weeks. (*Id.* at 42:18–43:2.)

Police responded to the scene at approximately 1:30 PM. (*Id.* at 74:6–7, 76:9–18.) A few minutes later, Petitioner returned to the scene. (*Id.* at 80:25–82:5.) One of the responding officers, Captain William Taylor, found a knife and a yellow pipe in Petitioner's vehicle.[5] (*Id.* at 82:10–21.) Captain Taylor did not observe any bruising or cuts on Petitioner, nor did Captain Taylor recall Petitioner seeking medical attention. (*Id.* at 82:22–83:6.) Another officer at the scene, Officer Giuseppe Giuca, testified that Petitioner told him that he was experiencing some pain around his back and shoulder blade, but when asked if he wanted medical attention, Petitioner declined. (*Id.* at 203:23–204:5.) Officer Giuca did not observe any injuries on

---

[4]  The Victim testified that he did not recall telling the grand jury that Petitioner stabbed him five times in abdomen. (Tr. 68:20–69:4.) He stated that "medical records show how many [stab wounds] there were." (*Id.* at 69:20–69:22.)

[5]  Witnesses at trial used "jack handle" and "pipe" interchangeably to refer to the object the Victim initially intended to use on Petitioner's windshield.

Petitioner's torso, back, or arms.  (*Id.* at 204:6–13.)

At around 2:05 PM, Petitioner called the Victim's cell phone, and Davis answered.  (*Id.* at 114:9–12.)  According to Davis, Petitioner told Davis that he "had to do it."  (*Id.* at 114:15–18.)

### 3.   Surveillance video

Officer Giuca obtained a copy of a CD-R of surveillance video from a nursing home close to the scene of the stabbing, over a week after the assault.  (*Id.* at 209:20–210:11, 214:3–11.)  He was unable to play the video on his computer because he did not have the correct player, (*id.* at 210:22–211:10, 211:22–212:2), but he initially "had no reason to believe" the file was damaged, (*id.* at 212:12–23.)

In or around November of 2011, Officer Giuca provided the District Attorney's Office with the CD-R.  (*Id.* at 217:8–11.)  During trial, Officer Giuca learned from the technical services unit of the District Attorney's Office that the file was damaged.  (*Id.* at 212:9–19.)  Officer Giuca testified that he could not obtain another copy because most surveillance videos are stored for only thirty days.  (*Id.* at 212:24–213:1.)

### 4.   Medical records and expert testimony

Dr. Chameeka Barrett, an emergency physician at the Kings County Hospital, introduced into evidence the medical records of the Victim and Petitioner.  (*Id.* at 129:9–13, 131:6–12, 156:10–157:9.)  Dr. Barrett testified that on April 25, 2011, the Victim was admitted to the hospital for having sustained one stab wound to the abdomen and one laceration to the left forearm.[6]  (*Id.* at 137:13–22, 148:9–14.)  From that single stab to the abdomen, the Victim

---

[6]  Dr. Barrett did not treat either Petitioner or the Victim on the relevant dates and testified based on medical records and expertise.  (*See* Tr. 136:6–8, 156:23–157:1.)

sustained one laceration to his diaphragm, one to his large intestines, three to his small intestines, and one to his appendix. (*Id.* at 140:13–141:2.) Dr. Barrett described some of these injuries as "life-threatening." (*Id.* at 142:8–10.) The Victim then underwent surgeries, for which he was placed under general anesthesia, to get his diaphragm, large and small intestines repaired, and his appendix removed. (*Id.* at 140:12, 17–19, 141:20–142:2.) The Victim later developed an infection and underwent an additional procedure. (*Id.* at 143:8–14.) Dr. Barrett testified that a patient usually is informed of their injuries after receiving treatment. (*Id.* at 147:3–6.)

Dr. Barrett also testified that an X-ray report, dated May 1, 2011, showed a fracture to one of Petitioner's ribs. (*Id.* at 157:10–16, 159:1–6.) The fracture "could be" consistent with being hit by a jack handle with a moderate amount of force. (*Id.* at 159:7–12, 165:21–24.)

### iv.   Summation remarks and mistrial motion

During summation, the prosecution argued that if Petitioner had acted in self-defense, he would have sustained multiple injuries and not fled from the scene. (*Id.* at 280:2–9, 281:1–14.) Thereafter, Petitioner moved for a mistrial, arguing that the prosecutor's remarks were inappropriate. (*Id.* at 294:1–18.) The Trial Court denied the motion. (*Id.* at 294:24–295:8.)

### v.   Jury instructions and deliberation

Petitioner requested an adverse inference instruction with regard to the damaged surveillance video, which the Trial Court declined to give. (*Id.* at 296:3–11, 296:25–297:17.) The Trial Court did instruct the jury on the justification of self-defense, in light of the evidence adduced at trial. (*Id.* at 314:24–321:24, 341:14–346:13.)

On September 11, 2012, while the jury was deliberating, the Trial Court noted for the record that unless the jury wanted to see the medical records, the court could provide the jury

with evidence to view without convening the parties.  (*Id.* at 335:11–16.)  The parties agreed. (*Id.*)

Later that day, the Trial Court advised the parties that the jury had submitted two notes: one requesting to see pictures of the pole, knife, and certain pictures of the Victim's injuries, and another asking the Trial Court to "explain the conditions of self-defense and the conditions when it is not self-defense."  (*Id.* at 336:2–8.)  Regarding the second request, the Trial Court stated, "We will have to do it first thing tomorrow morning."  (*Id.*)  Neither party objected at that time. (*Id.*)  Once the jury was returned to the courtroom, the court told the jury that it would read the self-defense charge the next day.  (*Id.* at 336:15–23.)  Again, no party objected.  (*Id.*)  The next day, the Trial Court read the charge without any objection and the jury resumed deliberations. (*Id.* at 341:11–346:10.)

### vi.  Jury verdict and sentence

On September 12, 2012, the jury found Petitioner guilty of assault in the first degree.  (*Id.* at 347:20–349:15.)  On February 25, 2013, the Trial Court sentenced Petitioner to 12 years of incarceration followed by five years of post-release supervision.  (Tr. of Sent'g Hr'g before the Hon. Danny K. Chun ("Sent'g.") 1:9, 16:24–17:4, annexed to State Ct. R. as Ex. 1, Docket Entry No. 5-1, at 551.)

### b.  Procedural history

### i.  Direct appeal

Petitioner appealed the verdict ("the Direct Appeal") to the State of New York Appellate Division, Second Department ("the Appellate Division"), arguing: (1) the prosecutor deprived Petitioner of a fair trial by making improper arguments during summation on Petitioner's justification defense, (Appellant's App. Div. Brief 21–31); (2) the State Court improperly

refused to give an adverse inference instruction on the destruction of surveillance footage, (*id.* at 32–39); and (3) the State Court penalized Petitioner for exercising his right to a jury trial by imposing a prison sentence that was four times the lowest pre-trial offer, (*id.* at 40–45).

Petitioner subsequently filed a pro se supplemental brief, arguing that: (1) the State Court erred in denying his pro se motion to dismiss the indictment pursuant to N.Y.C.P.L. § 190.50 based on his claim that he was denied his right to testify before the grand jury, (Pro Se Supp. Brief to the App. Div. ("Pro Se Brief") 6–18, annexed to Resp't Letter with Briefs and Leave App. Exs. as Ex. 4, Docket Entry No. 18-4), and (2) the prosecutor knowingly concealed information from the grand jury that Petitioner had acted in self-defense and adduced false testimony regarding the scope of injuries allegedly caused by Petitioner, thus depriving Petitioner of a fair trial, (*id.* at 18–24).

On June 28, 2017, the Appellate Division affirmed the judgment of conviction. *People v. Hunter*, 54 N.Y.S.3d 866 (App. Div. 2017). The Appellate Division denied on the merits Petitioner's claims regarding the prosecutor's remarks during summation, the adverse inference instruction, and the arguments made in his Pro Se Brief. *Id.* The Appellate Division also held that Petitioner failed to preserve his excessive sentence claim for appellate review by failing to "set forth the issue on the record at the time of sentencing." *Id.* Petitioner sought leave to appeal from the New York Court of Appeals, and on November 29, 2017, the New York Court of Appeals denied leave to appeal. *People v. Hunter*, 30 N.Y.3d 1019 (2017).

### ii. *Coram nobis* petition

On November 18, 2019, Petitioner moved in the Appellate Division for a writ of *error coram nobis*. (Coram Nobis Pet., annexed to Dolan Aff. as Ex. A, Docket Entry Nos. 10-1, 10-2, 10-3.) In support of his ineffective assistance of counsel claim, Petitioner alleged that appellate

9

counsel "failed to raise viable, significant[,] and obvious issues," including that (1) Petitioner's rights to effective assistance of counsel and a fair trial were violated by the Trial Court's failure to give trial counsel the opportunity to propose modifications to the Trial Court's response to a jury note, (*id.*, Docket Entry No. 10-1 at 28–37); (2) Petitioner was deprived of a fair trial because the proof offered at trial varied from the proof the grand jury used to vote on the indictment and therefore Petitioner was not able to mount a viable defense, (*id.*, Docket Entry No. 10-2 at 4–18); (3) Petitioner's "due process and equal protection" rights were violated because Petitioner was not permitted to testify before the grand jury pursuant to N.Y.C.P.L. § 190.50, (*id.*, Docket Entry No. 10-1, at 38–41, Docket Entry No. 10-2, at 1–3); and (4) appellate counsel failed to request a "weight of the evidence — element based review," which would have shown that the case involved "repeated and escalating[] prosecutorial misconduct" and that the evidence is inconsistent with Petitioner's conviction, (*id.*, Docket Entry No. 10-2, at 19–29.)

Petitioner's appellate counsel, Melissa Horlick, subsequently filed an affirmation responding to Petitioner's *coram nobis* motion. (Aff. of Melissa S. Horlick ("Horlick's Aff."), annexed to Dolan Aff. as Ex. B, Docket Entry No. 10-4.) Horlick stated that because the court read the note to the parties before convening the jury and counsel "did not object to the court's handling of the note or its response," the court's handling of the note was not an error. (*Id.* ¶ 17.) Horlick said that while she considered raising the claim that Petitioner's N.Y.C.P.L. § 190.50 rights were violated, she decided not to because, under the law, defense counsel had authority to decide his client should not testify before the grand jury. (*Id.* ¶ 18.) In addition, Horlick explained that she did not raise an argument concerning the discrepancies in the Victim's grand jury and trial testimony about the number of stab wounds because such discrepancies did not constitute a change in the state's theory that Petitioner intentionally and unjustifiably stabbed

Jones or constitute prosecutorial misconduct, and Horlick noted that the testimonial inconsistencies were before the jury.  (*Id.* ¶ 19.)  Finally, Horlick stated that she had decided against raising a weight of the evidence claim because she believed other issues were more persuasive and because she used the discrepancies in the Victim's testimony to argue that the errors she did raise were not harmless.  (*Id.* ¶ 20.)

On May 27, 2020, the Appellate Division summarily denied Petitioner's *coram nobis* petition on the merits because Petitioner "failed to establish that he was denied the effective assistance of appellate counsel."  *People v. Hunter*, 122 N.Y.S.3d 563 (App. Div. 2020).  On November 16, 2020, Petitioner filed a motion requesting leave to appeal the *coram nobis* petition to the New York Court of Appeals.  (Letter Notifying of Incomplete Mot. for Leave to Appeal ("Letter Notifying of Incomplete Mot.") 2, annexed to Resp't Letter dated Dec. 28, 2020 as Ex. 1, Docket Entry No. 19-1.)  On November 23, 2020, the New York Court of Appeals advised Petitioner that his application was incomplete and instructed Petitioner to cure the defects.  (*Id.* at 1.)

On February 23, 2021, Petitioner provided the New York Court Appeals with the additional submissions in support of his application for leave to appeal the *coram nobis* petition, (Suppl. Submission in Supp. of Appl. for Leave to Appeal Coram Nobis Pet., annexed to Petitioner's Letter dated March 26, 2021, Docket Entry No. 23), and on March 24, 2021, the New York Court of Appeals denied Petitioner's application, *People v. Hunter*, 36 N.Y.3d 1097 (2021).

### iii.   Federal habeas petition

On March 6, 2019, Petitioner filed a timely habeas petition with the Court.  (Pet.)  On May 13, 2019, the Court entered an order granting Petitioner's request to stay the petition

pending the outcome of Petitioner's writ of error *coram nobis* application.  (Order dated May 13, 2019.)

On June 8, 2020, Petitioner notified the Court of the resolution of the *coram nobis* petition and requested that the Court lift the stay of proceedings, (Pet'r Letter dated June 1, 2020, Docket Entry No. 6), and on June 10, 2020, the Court lifted the stay on the habeas petition. (Order Lifting Stay dated June 10, 2020.)  Petitioner subsequently moved to appoint counsel, (Mot. to Appoint Counsel, Docket Entry No. 12), and to hold his petition in abeyance, (Mot. to Reinstate Stay, Docket Entry No. 14).  On December 18, 2020, this Court denied both requests without prejudice.  (Order dated December 18, 2020.)

On January 14, 2021, Petitioner requested that the Court proceed only with the exhausted claims, (Letter dated Jan. 5, 2021, Docket Entry No. 20), and on December 19, 2021, the Court granted the request, (Order dated Jan. 19, 2021).

On March 26, 2021, Petitioner informed the Court that all his claims had been exhausted and requested that the Court review all of the writ of habeas corpus claims before the Court. (Pet'r Letter dated March 26, 2021, Docket Entry No. 25.)

## II.   Discussion

### a.   Standard of review

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an application for a writ of habeas corpus by a person in custody pursuant to a state court judgment may only be brought on the grounds that his or her custody is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a). A petitioner is required to show that the state court decision, having been adjudicated on the merits, is either "contrary to, or involved an unreasonable application of, clearly established

Federal law" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(1)–(2); *see also Brown v. Davenport*, 596 U.S. ---, ---, 142 S. Ct. 1510, 1520 (Apr. 21, 2022) ("[A] federal court '*shall . . . not gran[t]*' relief with respect to a claim that has been adjudicated on the merits in state court '*unless*' the state court's decision was (1) 'contrary to' or an 'unreasonable application of' clearly established federal law, as determined by the decisions of this Court, or (2) based on an 'unreasonable determination of the facts' presented in the state-court proceeding." (emphasis and alterations in original) (quoting 28 U.S.C. § 2254(d))); *Shoop v. Hill*, 586 U.S. ---, ---, 139 S. Ct. 504, 506 (Jan. 7, 2019) (per curiam) ("[H]abeas relief may be granted only if the state court's adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of,' Supreme Court precedent that was 'clearly established' at the time of the adjudication." (first quoting *White v. Woodall*, 572 U.S. 415, 419–20 (2014); and then citing *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013))); *Kernan v. Hinojosa*, 578 U.S. 412, 413 (2016) (per curiam); *Woods v. Donald*, 575 U.S. 312, 313 (2015) (per curiam); *Johnson v. Williams*, 568 U.S. 289, 292 (2013). "An 'adjudication on the merits' is one that '(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment.'" *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001)); *see also Harrington v. Richter*, 562 U.S. 86, 98 (2011) (concluding that summary rulings constitute adjudications on the merits).  To prove that the state court's decision was unreasonable, "a petitioner must persuade a federal court that no 'fairminded juris[t]' could reach the state court's conclusion." *Brown*, 142 S. Ct. at 1525 (alteration in original) (quoting *Davis v. Ayala*, 576 U.S. 257, 269 (2015)); *see also Harrington*, 562 U.S. at 101 (explaining that under the section 2254(d) standards, a state court's decision must stand as long as "'fairminded jurists could disagree' on the correctness of the . . .

decision." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

For the purposes of federal habeas review, "clearly established law" is defined as "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Glebe v. Frost*, 574 U.S. 21, 24 (2014) (per curiam) ("As we have repeatedly emphasized, however, circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'" (quoting 28 U.S.C. § 2254(d)(1))); *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (per curiam) ("The Sixth Circuit also erred by consulting its own precedents, rather than those of this Court, in assessing the reasonableness of the [state] [c]ourt's decision."). A state court decision is "contrary to" or an "unreasonable application of" clearly established law if the decision (1) is contrary to Supreme Court precedent on a question of law, (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts, or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Williams*, 529 U.S. at 412–13. In order to establish that a state court decision is an unreasonable application of federal law, the state court decision must be "more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The decision must be "objectively unreasonable." *Id.* (citing *Williams*, 529 U.S. at 409). A court may also grant habeas relief if the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). To accomplish this, "[i]t is not enough to show that 'reasonable minds reviewing the record might disagree about the finding in question.'" *Brown*, 142 S. Ct. at 1525 (quoting *Brumfield v. Cain*, 576 U.S. 305, 314 (2015)); *see also Brumfield*, 576 U.S. at 313–14 ("[S]tate-court factual determinations [are not] unreasonable 'merely because

[a federal post-conviction court] would have reached a different conclusion in the first instance.'" (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010))). Rather, factual determinations made by the state court are "presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Even if "'[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'" *Wood*, 558 U.S. at 301 (alterations in original) (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2006)). A court may overturn a state court's factual determination only if the record cannot "plausibly be viewed" as consistent with the state court's fact-finding or if "a reasonable factfinder must conclude" that the state court's decision was inconsistent with the record evidence. *Rice*, 546 U.S. at 341.

### b.  Handling of the jury note

Petitioner claims that the trial was "irreparably tainted" by a "mode of proceeding error." (Pet. 27 Ex. 4.) Specifically, Petitioner argues that the Trial Court violated *People v. O'Rama*, 78 N.Y.2d 270 (1991), by not giving the parties advance notice of the responsive instruction it intended to give in response to a substantive jury question. (*Id.*) Petitioner also contends that, by preventing defense counsel from seeking modifications to the instruction before the jury was exposed to potentially harmful information, the court denied Petitioner the assistance of counsel and violated Petitioner's Sixth Amendment right to a fair trial. (*Id.*)

Respondent argues that this claim is unexhausted, is not a basis for habeas relief, and is "patently frivolous" on the merits. (Resp't Mem. in Resp. to Pet. ("Resp. to Pet.") 4–6, Docket Entry No. 10.) Respondent first contends that the claim is unexhausted because this claim was not raised on appeal by appellate counsel or Petitioner. (*Id.* at 5.) Second, Respondent argues

that the claim is rooted in state law and therefore is not cognizable on federal habeas review.  (*Id.* at 6.)  Third, Respondent contends that the claim is "patently frivolous" because, contrary to Petitioner's argument, the Trial Court "read the [jury] note, twice, in the presence of the parties, and without any objection" and thereby followed the procedure for handling jury notes outlined in *O'Rama*.  (*Id.* at 7.)

For the reasons set forth below, Petitioner's claim does not entitle him to relief because the claim is procedurally defaulted and fails on the merits.

### i.   Petitioner's claim is deemed exhausted but procedurally defaulted

Generally, a state prisoner may not obtain federal habeas relief unless that prisoner has exhausted the available remedies in state court.  *See* 28 U.S.C. § 2254(b)(1)(A); *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) ("[P]risoners must ordinarily exhaust state remedies before filing for federal habeas relief.").  To exhaust all state remedies, a petitioner must present the claim to the highest court in the state (after preserving it in accordance with state law) and specifically inform the court (and the lower courts before it) of the bases for the federal claim. *Ramirez v. Attorney Gen. of New York*, 280 F.3d 87, 94 (2d Cir. 2001); *see also Cornell v. Kirkpatrick*, 665 F.3d 369, 375 (2d Cir. 2011) ("Exhaustion of state remedies requires that a petitioner fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." (quoting *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011))).  Where a petition contains both exhausted and unexhausted claims, generally the "mixed petition" should be dismissed to allow the petitioner to state court to exhaust all claims.[7]  *Rose v. Lundy*, 455 U.S. 509, 516, 521 (1982).

---

[7]  Under certain circumstances, a district court might instead stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust this previously unexhausted

However, where a state prisoner "has no further state avenues in which to press [an] issue" because" the prisoner failed to raise the claim in a particular proceeding and the opportunity for the prisoner to do so has passed, courts will consider the claim "exhausted but procedurally defaulted." *Jackson v. Conway*, 763 F.3d 115, 143–44 (2d Cir. 2014) (citing *Sweet v. Bennett*, 353 F.3d 135, 140 (2d Cir. 2003)); *see also Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (explaining that "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile," a federal court may deem the claim exhausted but procedurally defaulted (citations omitted)); 28 U.S.C. 2254(b)(1) ("An application for a writ of habeas corpus . . . shall not be granted unless . . . (A) the applicant has exhausted all remedies available . . . or (B)(i) there is an absence of available State correct process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.").  The most common circumstance involves the failure to bring a claim that could have been brought on direct appeal: such a claim "is now exhausted because state remedies are no longer available" as a consequence of the petitioner having "already taken his one direct appeal," but the claim is "not '*properly* exhausted'" because the claim was not "fairly present[ed] . . . to the state courts" on direct appeal, causing the claim to become "procedurally barred from consideration in a collateral attack." *Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) (emphasis in original) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)).  Under New York law, a claim must be brought, if at all, on direct appeal if "sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion."  N.Y.C.P.L. §

---

claims. *Rhines v. Weber*, 544 U.S. 269, 275–78 (2005) (citing *Rose v. Lundy*, 455 U.S. 509 (1982)).

440.10(2)(c); *see also Sweet*, 353 F.3d at 139 ("New York law requires a state court to deny a motion to vacate a judgment based on a constitutional violation where the defendant unjustifiably failed to argue the constitutional violation on direct appeal despite a sufficient record.").  While New York permits a defendant to file a *coram nobis* petition to vacate an order determining an appeal on the basis that he was deprived of effective assistance of appellate counsel, "that procedural vehicle does not 'fairly present' the underlying claim to the state court." *Dominique v. Artus*, 25 F. Supp. 3d 321, 331 (E.D.N.Y. 2014) (citing *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001)); *see also Jamison v. Auburn Correctional Facility*, No. 10-CV-344, 2015 WL 8770079, at *18 (E.D.N.Y. Dec. 14, 2015) (same).  A procedurally defaulted claim is not reviewable, unless the petitioner demonstrates "cause and actual prejudice" for the default, or shows that the failure to consider the claim would result in a miscarriage of justice because the petitioner "is actually innocent."  *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (citing *Bousley v. United States*, 523 U.S. 614 (1998)); *see also Aparicio*, 269 F.3d at 90 (in order to avoid having his habeas claim dismissed as procedurally defaulted, "the petitioner must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)") citing *Coleman*, 501 U.S. at 748–50 (1991)).

Petitioner did not present the jury note claim to a state court for review.  While he presented this claim in the context of his *coram nobis* petition, (Coram Nobis Pet. 2), the *coram nobis* petition only exhausted his claim for ineffective assistance of appellate counsel, not any of the underlying claims.  *Dominique*, 25 F. Supp. 3d at 331 ("The writ for error of *coram nobis* exhausted [p]etitioner's claim for ineffective assistance of appellate counsel, but the only constitutional claim that [p]etitioner 'was permitted to raise in seeking a writ of error *coram*

*nobis* was ineffective assistance of appellate counsel, a claim that is distinct from [the underlying claims] in procedural terms under state law and in their federal constitutional sources.'" (alteration in original) (quoting *Turner*, 262 F.3d at 123)). Therefore, this specific claim has not been exhausted.

However, this Court deems the claim exhausted, rather than dismissing the petition to give Petitioner a chance to exhaust this claim, because Petitioner lacks an "available State corrective process" to raise this claim. 28 U.S.C. 2254(b)(1)(B)(i); *see Jackson*, 763 F.3d at 143 (deeming the issue "exhausted but procedurally defaulted" because "[the petitioner] ha[d] no further state avenues in which to press this issue because he ha[d] completed his direct appeal and the nature of the claim [was] apparent from the face of the record, meaning that he would be barred from raising it in a motion to vacate the judgment"). Petitioner has already exercised his one and only direct appeal and he cannot raise this claim pursuant to Section 440.10(2)(c) because the claim was based in the record and could have been raised on direct appeal. *See Sweet*, 353 F.3d at 139 ("New York law requires a state court to deny a motion to vacate a judgment based on a constitutional violation where the defendant unjustifiably failed to argue the constitutional violation on direct appeal despite a sufficient record.").

Even if ineffective assistance of appellate counsel could theoretically excuse Petitioner's failure to raise the claim on direct appeal and allow for state collateral review pursuant to N.Y.C.P.L. § 440.10(2)(c), because the Appellate Division already determined in the *coram nobis* proceeding that Petitioner had not been denied effective assistance of appellate counsel, "it is most unlikely that another state court would suddenly find the performance of Petitioner's appellate counsel to be so ineffective as to justify [p]etitioner's failure to include this . . . claim in his direct appeal." *Aparicio*, 269 F.3d at 91 (finding the petitioner had no available State

corrective process for his claims for these reasons).  Because a New York court would find the claim procedurally barred and Petitioner therefore lacks an available State corrective process for this claim, the Court treats the claim as exhausted, but procedurally defaulted.  *See, e.g., Jackson*, 763 F.3d at 143; *Aparicio*, 269 F.3d at 90–91 (quoting *Coleman*, 501 U.S. at 735 n.1); *Dominique*, 25 F. Supp. 3d at 331.

To cure the procedural default, Petitioner must either demonstrate cause for the default and prejudice, or show actual innocence.  *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008); *Aparicio*, 269 F.3d at 91 (citing *Coleman*, 501 U.S. at 735).  "A defense counsel's ineffectiveness in failing to properly preserve a claim for review in state court can suffice to establish cause for a procedural default [but] only when the counsel's ineptitude rises to the level of a violation of a defendant's Sixth Amendment right to counsel."  *Aparicio*, 269 F.3d at 91 (citing *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000)); *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986).  Thus, "ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim."  *Edward*s, 529 U.S. at 451 (emphasis in original).  For the reasons explained in Section II(e) below, Petitioner has not demonstrated ineffective assistance of counsel in violation of the Sixth Amendment.  Nor has he demonstrated prejudice.  Therefore, Petitioner has not presented sufficient cause for the procedural default.

Nor has Petitioner demonstrated actual innocence, or that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  *Sweet*, 353 F.3d at 142 (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998)).  "[T]he fundamental miscarriage of justice exception is 'extremely rare' and should be applied only in 'the extraordinary case[s].'"  *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 321–22).  Petitioner has not presented

additional exculpatory scientific evidence, trustworthy eyewitness reports, or other critical

evidence not presented at trial to establish his innocence.  *Dominique*, 25 F. Supp. 3d at 332

(collecting cases discussing the type of evidence that would be required to demonstrate actual

innocence).  For these reasons, there is no cure for Petitioner's procedural default.

> ### ii.   Even if Petitioner's claim was reviewable, it would fail on the merits

Even if Petitioner's claim was not procedurally defaulted, it would nevertheless fail on

the merits.

First, Petitioner's claim that the court's handling of the jury instruction violated

N.Y.C.P.L. § 310.30 is rooted in state law and is not cognizable on federal habeas review.

*Fabers v. Lamanna*, No. 18-CV-2399, 2020 WL 1875288, at *10 (E.D.N.Y. Apr. 15, 2020)

("[A] claim premised on a violation of New York Criminal Procedure Law Section 310.30 does

not allege a violation of a federally protected right." (citation omitted)); *Solorzano v. New York*,

No. 16-CV-04363, 2019 WL 3304558, at *9 (E.D.N.Y. July 23, 2019) ("[T]he petitioner's

claim[] [is] premised on alleged violation of New York's law[] — the handling of the jury's

notes pursuant to [N.Y.C.P.L.] § 310.30."); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68

(1991) ("[F]ederal habeas corpus relief does not lie for error of state law." (quoting *Lewis v.*

*Jeffers*, 497 U.S. 764, 780 (1990))).

Second, although Petitioner alleges that the purported mishandling of the jury note

violated his Sixth Amendment rights, (Pet. Ex. 4), he fails to show that the note was mishandled

or allege that he suffered prejudice.  "[A] criminal defendant has a Sixth Amendment right to

ensure that jury notes are answered in open court and that counsel is given the opportunity to be

heard before the judge responds to the note."  *Serrano v. Kirkpatrick*, No. 11-CV-2825, 2013

WL 3226849, at *10 (S.D.N.Y. June 25, 2013) (citing *United States v. Robinson*, 560 F.2d 507,

516 (2d Cir. 1977)); *see also Feliciano v. Lee*, No. 18-CV-9591, 2020 WL 5076865, at *10 n.7 (S.D.N.Y. Aug. 26, 2020) (assuming "that defendants have constitutional right to respond to jury notes in open court" and therefore that the claim was cognizable on habeas review).  A petitioner is only entitled to relief, however, if he can demonstrate prejudice as to the mishandling of the jury note.  *Feliciano*, 2020 WL 5076865, at *10–11; *Serrano*, 2013 WL 3226849, at *10 (because the petitioner could not "show that he was prejudiced from any error involving the jury note" he was not entitled to habeas relief); *see also Fabers*, 2020 WL 1875288, at *10 (explaining that even if the petitioner had brought a Sixth Amendment rather than a state law claim, he still would not be entitled to relief because he has not demonstrated prejudice); *Williams v. Artus*, 691 F. Supp. 2d 515, 525 (S.D.N.Y. 2010) (finding the petitioner failed to establish prejudice where he "made no suggestion of what impact, if any, his counsel's input would have had on the court's responses to the jury's notes").

Petitioner has not demonstrated that the note was mishandled or alleged any prejudice. Contrary to Petitioner's argument, the record shows that the court read the note into the record once outside the presence of the jury, affording counsel the opportunity to suggest appropriate responses, and a second time before reading the instruction to the jury.  (Tr. 336:2–346:15.)  In addition, Petitioner has not alleged he suffered any prejudice as a result of any purported error. *See Williams*, 691 F. Supp. at 525.

Accordingly, the Court finds that Petitioner is not entitled to habeas relief based on this claim.

### c.   Denial of right to testify before grand jury, in violation of the Due Process Clause and Equal Protection Clause, and the denial of the motion to dismiss the indictment

Petitioner contends that he was arbitrarily and unfairly denied his right to testify before

the grand jury pursuant to N.Y.C.P.L. § 190.50(5)(9), in violation of his due process and equal

protection rights, and that the State Court erred in failing to conduct an evidentiary hearing prior

to dismissing his motion to dismiss the indictment.  (Pet. Ex. 6.)

Respondent argues that Petitioner's claims are not cognizable on federal habeas review

and, even if they were, they are meritless.  (Resp. to Pet. 10–13.)

### i.   Arbitrary and unfair denial of right to testify

Petitioner contends that the court violated his due process and equal protection rights by

arbitrarily and unfairly denying his "timely and properly submitted" N.Y.C.P.L. § 190.50(5)(9)

motion to testify before the grand jury.  (Pet. Ex. 6.)  In the alternative, Petitioner claims that if

his notice did not meet the requirements of CPL § 190.50(5)(9), the statute is unconstitutional as

applied.  (*Id.*)  Finally, Petitioner argued that the violations of his grand jury rights were not

harmless.  (*Id.*)

Respondent first argues that this claim is not cognizable on federal habeas review

because there is no federal constitutional right to a grand jury, for a defendant to testify before a

grand jury, or to effective assistance of counsel at the state grand jury stage.  (Resp. to Pet. 10–

11.)  Next, Respondent argues that, even if the claim was cognizable on habeas review, any error

concerning the grand jury proceedings was rendered harmless by Petitioner's conviction at trial.

(*Id.* at 11.)  Finally, Respondent contends that the Appellate Division properly denied the claim

because the right to testify before the grand jury is a limited statutory right, not a constitutional

right, since under New York law, an attorney may reasonably decide to prevent his client from

testifying before a grand jury for strategic reasons without depriving the defendant of effective

assistance of counsel.  (*Id.* at 12–13.)

For the reasons explained below, Petitioner's claims relating to his right to testify before

the grand jury and the Trial Court's denial of his motion to dismiss the indictment fail.

**1. Petitioner's due process and equal protection claims are cognizable**

The Fifth Amendment right to grand jury indictment does not apply to the states.

*Alexander v. Louisiana,* 405 U.S. 625, 633 (1972); *LanFranco v. Murray*, 313 F.3d 112, 118 (2d Cir. 2002); *Fields v. Soloff,* 920 F.2d 1114, 1118 (2d Cir. 1990); *Sain v. Capra*, No. 15-CV-5315, 2021 WL 6808294, at *8 (S.D.N.Y. Aug. 19, 2021); *Occhione v. Capra*, 113 F. Supp. 3d 611, 630–31 (E.D.N.Y. 2015).  Thus, ordinarily, "[c]laims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court."  *Davis v. Mantello*, 42 F. App'x 488, 490–91 (2d Cir. 2002); *see also Sain*, 2021 WL 6808294, at *8 (same); *Occhione*, 113 F. Supp. 3d at 630–31 (same).  In addition, "[a]ny grand jury deficiencies are rendered harmless by a petit jury conviction assessing petitioner's guilt under a heightened standard of proof."  *Occhione*, 113 F. Supp. at 630–31 (citing cases); *see also Sain*, 2021 WL 6808294, at *8 (same).

More specifically, the right to testify before a grand jury is rooted in state law and therefore is not cognizable in a federal habeas proceeding.  *Davis*, 42 F. App'x at 491 n.1 (explaining that the right to testify before the grand jury is a state, statutorily created right); *Harrell v. Chappius*, No. 17-CV-758, 2020 WL 10226738, at *17 (S.D.N.Y. Jan. 6, 2020) (dismissing the petitioner's claim for this reason), *report and recommendation adopted*, No. 17-CV-758, 2020 WL 10226736 (S.D.N.Y. Nov. 25, 2020); *Occhione*, 113 F. Supp. 3d at 630–31 (explaining that the claim arose under state law and was not cognizable on habeas review and that any error was harmless); *Gibbs v. New York*, No. 01-CV-5046, 2002 WL 31812682, at *4 (S.D.N.Y. Dec. 12, 2002) ("[A]s [the right to testify before a grand jury] is a right created by state law alone, [the claim is] non-cognizable in a federal habeas proceeding.").

"Once a state itself creates . . . a right, however, due process may prevent it from causing the right to be forfeited in an arbitrary or fundamentally unfair manner." *Occhione*, 113 F. Supp. 3d at 630–31 (quoting *Michael v. Dalsheim,* No. 90-CV-2959, 1991 WL 99368, at *10 (E.D.N.Y. May 22, 1991)); *see also Evitts v. Lucey*, 469 U.S. 387, 393 (1985) (explaining that if a state guarantees criminal defendants the right to appeal, the procedures used in deciding the appeals must comport with the Due Process and Equal Protection clauses).  Because the Due Process and Equal Protection Clauses prevent a state from arbitrarily and unfairly depriving a petitioner of his state-created right to testify before a grand jury, a claim that a petitioner's due process and equal protection rights were violated because the petitioner was arbitrarily and unfairly denied his right to testify before a grand jury is cognizable on federal habeas review. *Saldana v. New York*, 665 F. Supp. 271, 282 (S.D.N.Y. 1987), *rev'd on other grounds*, 850 F.2d 117, 119 2d Cir. 1988); *Webb*, 2014 WL 4953559, at *6.  A petitioner is only entitled to relief, however, if the error was not harmless.  *Saldana*, 850 F.2d at 119.

While Respondent correctly observes that a claim that Petitioner was denied his state-created right to testify pursuant to N.Y.C.P.L. § 190.50(5)(9) would be rooted in state law and therefore not cognizable in a federal habeas proceeding, Petitioner's claim that his due process and equal protection rights were violated because he was arbitrarily and unfairly denied his right to testify before the grand jury, is cognizable in a federal habeas proceeding.  *Saldana*, 665 F. Supp. at 282, *rev'd on other grounds*, *Saldana*, 850 F.2d at 119; *Webb*, 2014 WL 4953559, at *6. Specifically, Petitioner claims that he provided timely notice of his request to testify prior to the filing of the indictment and was arbitrarily and unfairly denied his right in violation of his constitutional rights.  (Pet. Ex. 6.)  Petitioner also raised this specific claim on direct appeal in his pro se brief, (Pro Se Brief 3–10; Def.'s Pro Se Leave to Appeal to N.Y. Ct. of Appeals ("Pro

25

Se Leave to Appeal") 2, Docket Entry No. 18-8), and therefore the claim is exhausted, *see Ramirez*, 280 F.3d at 94.

### 2.   Petitioner's claim fails on the merits

Liberally construed, Petitioner's specific claim appears to be that he complied with the procedure and was arbitrarily denied his right to testify prior to the filing of the indictment, not only because his counsel wrongfully denied him his right to testify, but also because after his counsel withdrew the N.Y.C.P.L § 190.50(5)(a) notice, Petitioner filed a motion requesting that the State Court relieve said counsel and dismiss the indictment, again providing the State with notice of and renewing his request to testify.[8]

Under the New York statute, "[a defendant] has a right to appear before [a] grand jury as a witness in his own behalf if, prior to the filing of any indictment or any direction to file a prosecutor's information in the matter, he serves upon the district attorney of the county a written notice making such request and stating an address to which communications may be sent." N.Y.C.P.L § 190.50(5)(a).  Where the defendant notifies the State of his intention to testify before the indictment is filed, he is entitled to do so, even if the grand jury has already voted before the defendant gives such notice.  *People v. Young*, 526 N.Y.S.2d 577, 578 (App. Div. 1988); *People v. Skrine*, 509 N.Y.S.2d 589, 590 (App. Div. 1986) (finding the indictment should

---

[8]   The record appears to show procedurally that on April 26, 2011, Petitioner's original counsel filed the N.Y.C.P.L § 190.50(5)(a) notice, indicating Petitioner wished to testify before the grand jury.  (Resp't Resp. to Pet'r Pro Se Supp. Brief ("Resp't Resp. to Pro Se Brief") 3–4, annexed to Resp't Letter with Briefs and Leave App. Exs. as Ex. 5, Docket Entry No. 18-5.)  Then, on April 29, 2011, the same counsel withdrew, in writing and on the record, Petitioner's earlier notice.  (*Id.* at 4.)  The Grand Jury voted to indict on April 29, 2011.  (*Id.*)  On May 10, 2011, Petitioner filed a pro se motion to dismiss the indictment on the grounds that his right to testify before the grand jury had been violated and requesting that his counsel be relieved.  (*Id.*)  On May 12, 2011, the indictment was filed.  (*Id.*)  On June 2, 2011, the Court then assigned new counsel, who adopted Petitioner's pro se motion to dismiss the indictment, which was dismissed by the State Court on August 16, 2011.  (*Id.* at 4–5.)

have been dismissed on this basis).   However, at least two New York courts have held that where the defendant waived the right to testify, he could not attempt to reassert the right after the grand jury voted, even though the indictment has not yet been filed.  *People v. Trinidad*, No. 220-2009, 2009 WL 4824009, at *1–2 (N.Y. Sup. Ct. 2009); *People v. Domalevski*, 598 N.Y.S.2d 143, 144 (N.Y. Sup. Ct. 1993).  New York courts have repeatedly held that counsel may strategically decide his client should not testify before the grand jury and that counsel's failure to honor his client's wishes to testify before the grand jury does not amount to ineffective assistance of counsel.  *See Hogan*, 26 N.Y.3d at 786–87 (citing cases).

Because counsel may waive his client's right to testify before the grand jury, Petitioner's rights were not arbitrarily or unfairly violated in violation of his due process or equal protection rights when counsel rescinded the notice of Petitioner's request to testify.  *See id.*  In addition, even if Petitioner's motion to dismiss the indictment qualified as renewed notice of a request to testify, two state courts have held that once waived, a Petitioner cannot attempt to reinvoke the right after the grand jury voted.  *See Trinidad*, 2009 WL 4824009, at *1–2; *Domalevski*, 598 N.Y.S.2d at 144.  Finally, even assuming that Petitioner's due process and equal protection rights were violated because he should have been able to reinvoke the right to testify, Petitioner is not entitled to relief because there is no evidence that the outcome of the grand jury proceeding would have been different.  *See Saldana*, 850 F.2d at 119.

The Court finds *Saldana* instructive.  In *Saldana*, the district court had held that because Saldana had substantially complied with the statute and provided notice of his intent to testify before the grand jury, the State's failure to permit him to testify before the grand jury had denied him due process.  665 F. Supp. 271.  The Second Circuit reversed, finding that the specific claims that the actions had violated his constitutional rights to due process and equal protection

were unexhausted and that the error was harmless beyond a reasonable doubt because there was no reason to believe his testimony before the grand jury could have resulted in any different outcome.  850 F.2d 117 ("At most, [the defendant] could have claimed that he had no part in [the codefendant's] shotgun blast . . . . Against this were his admissions [to a witness] that he forced [the codefendant] to shoot, and other circumstantial evidence of his presence at the scene.").

Assuming Petitioner's due process and equal protection rights were violated, the Court finds any error harmless beyond a reasonable doubt.  *See id.*  If Petitioner had testified before the grand jury, Petitioner could have claimed that he acted in self-defense, but the grand jury also would have been shown evidence that on the day of the assault, Petitioner had threatened the Victim, broken his windshield and lured him to the location of the stabbing and that the Victim had been stabbed and that Petitioner was the one who stabbed him, and would have also heard the Victim's testimony that Petitioner was the initial aggressor.  *See id.* (reviewing the State's evidence presented at trial and concluding the petitioner had not been prejudiced by being denied the opportunity to testify before the grand jury given that the petitioner made admissions to a witness and in light of other circumstantial evidence placing him at the scene).

### ii.   Failure to conduct a hearing prior to dismissing Petitioner's motion to dismiss the indictment

Petitioner argues that the court, in considering and denying his motion to dismiss the indictment, erred in failing to hold a hearing under N.Y.C.P.L. § 210.45 and in not referring the case back the original judge that relieved Petitioner's counsel.  (Pet. Ex. 6.)

Respondent does not respond to this claim.

The Supreme Court has clearly articulated that a perceived error of state law is not a ground upon which the writ of habeas corpus may issue.  *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of

state law.'" (quoting *Estelle*, 502 U.S. at 67)); *Wright v. Duncan*, 500 F. App'x 36, 38 (2d Cir.

2012) ("A federal habeas court generally does not review purported errors of state law." (citing

*Estelle*, 502 U.S. at 67–68)).

While "state statutes may create liberty interests that are entitled to the procedural

protections of the Due Process Clause of the Fourteenth Amendment," *Vitek v. Jones*, 445 U.S.

480 (1980); *Jelinek v. Costello*, 247 F. Supp. 2d 212, 278 (E.D.N.Y. 2003) (citations omitted),

"[a]mple precedent establishes that a state rule of criminal procedure . . . does not create a liberty

interest that is entitled to protection under the federal Constitution," *Norton v. Town of Islip*, 678

F. App'x 17, 21 (2d Cir. 2017) (quoting *Watson v. City of New York*, 92 F.3d 31, 37–38 (2d Cir.

1996)). "To be afforded due process protection, a state procedural right must implicate those

rights that the Supreme Court has long considered fundamental." *Mitchell v. Ward*, 409 F. Supp.

3d 117, 120 (E.D.N.Y. 2017) (finding the state procedural right to apply for bail pending appeal

does not involve any fundamental liberty interest); *cf. Jelinek*, 247 F. Supp. 2d at 278 (explaining

that certain state-created rights, including a defendant's right to testify before the grand jury, are

subject to the due process clause and may not be arbitrarily abrogated).

Petitioner's claim that the Trial Court violated N.Y.C.P. § 210.45 in failing to conduct an

evidentiary hearing prior to denying his motion to dismiss the indictment is not cognizable on

federal habeas review.[9] The state procedural right does not implicate a fundamental liberty

interest entitled to due process protection,[10] *see Mitchell*, 409 F. Supp. 3d at 120, and, even

---

[9] The Court declines to consider whether this specific claim is exhausted and not procedurally defaulted.

[10] Under New York law, a court may deny a motion to dismiss without conducting a hearing if no legal basis for dismissal is alleged, the moving papers do not contain sworn allegations of all essential facts, or an allegation of essential fact is "conclusively refuted."

assuming the State Court improperly denied Petitioner an evidentiary proceeding, the State Court's refusal to conduct one does not warrant intervention by the federal courts, *see Peppard v. Fischer*, 739 F. Supp. 2d 303, 306 (W.D.N.Y. 2010) (explaining that a violation of a state rule of criminal procedure does not suffice as a basis for habeas corpus relief).

### d.   Grand jury proceedings and variance in proof at trial claim

Petitioner claims that the evidence presented to the grand jury was misleading and varied from the evidence presented at trial, violating his due process rights.  (Pet. Ex. 7 at 1.)  In support, he contends that the Victim testified before the grand jury that he sustained five stab wounds, but medical records presented at trial established that the Victim sustained only one stab to the abdomen and one laceration to the left arm.  (*Id.*)  Petitioner also argues that the prosecution withheld "truthful," "material evidence" that could have led the grand jury to vote a "no true bill."  (*Id.*)  Petitioner contends that had the grand jury been presented with medical records and testimony showing that Petitioner only stabbed the Victim's abdomen once, it would have been able to properly consider a justification charge.  (*Id.*)

Petitioner also argues that the proof offered at trial varied from the proof presented before the grand jury and from factual allegations in the indictment itself.  (*Id.*)  Petitioner contends that, as a result of this variance, he was not apprised "with reasonable certainty" of the accusations against him and was denied "fair notice" and the ability to create a viable defense.  (*Id.*)  Petitioner claims that this prosecutorial misconduct caused him to be convicted on the basis of facts not found by nor presented to the grand jury who indicted him.  (*Id.* at 2.)  Petitioner

---

N.Y.C.P. § 210.45(5); *see People v. Washington*, 919 N.Y.S.2d 668, 669 (App. Div. 2011) (same).  Otherwise, the court must conduct an evidentiary hearing and make findings of facts essential to the motion prior to deciding it.  N.Y.C.P. § 210.45(6); *Washington*, 919 N.Y.S.2d at 668.

raised these claims before the Appellate Division.  (Pro Se Brief 6, 8; Coram Nobis Pet. 14–15, Docket Entry No. 10-1.)

Respondent contends that Petitioner's claims are not cognizable on habeas review, because (1) indictment by a grand jury in New York is a right dependent on state law, not on federal law, and federal habeas relief may not be granted for violations of state law, and (2) any alleged improprieties in the grand jury proceedings were cured by the jury's verdict of guilt beyond a reasonable doubt at trial.  (Resp. to Pet. 14–18, 19–20.)  Respondent further argues that to the extent the claim is reviewable, (1) the difference between the Victim's testimony and medical evidence presented at trial did not suggest perjury but was reasonably attributable to mistake on the Victim's part, and (2) the same difference in proof did not constitute an impermissible "variance" in the state's theory of prosecution that deprived Petitioner of fair notice and the ability to prepare a defense.  (*Id.* at 15, 18–19.)

Petitioner's claims do not support granting a writ of habeas corpus.

### i.   False or misleading evidence provided to the grand jury

Claims of impropriety in a state grand jury proceeding are not cognizable in federal habeas proceedings where any harm was cured by the petit jury's conviction.  *See United States v. Mechanik*, 475 U.S. 66, 70 (1986) ("Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt."); *Lopez v. Riley*, 865 F.2d 30, 33 (2d Cir. 1989) (petitioner's claims of impropriety before the grand jury, which concerned "the sufficiency of the evidence, a failure to develop exculpatory evidence by the prosecutor, the presentation of prejudicial evidence and error in examining the law," were determined to be harmless under *Mechanik* because each of the alleged improprieties was cured in the trial before the petit jury, which convicted petitioner); *Velazquez*

*v. Poole*, 614 F. Supp. 2d 284, 331–32 (E.D.N.Y. 2007) (finding that a conviction by a petit jury renders harmless any errors in the grand jury process where the petitioner alleged that the prosecutor elicited perjurious testimony).  Applying the Second Circuit decision in *Lopez*, district courts in the Second Circuit have held that false testimony before the grand jury is insufficient to state a cognizable claim for habeas review, where rendered harmless by a petit jury's guilty verdict.  *See, e.g.*, *Kappen v. Bell*, No. 18-CV-5784, 2022 WL 939847, at *6 (E.D.N.Y. Mar. 29, 2022); *Smith v. Hulihan*, No. 11-CV-2948, 2011 WL 4058764, at *10 (S.D.N.Y. Sept. 13, 2011), *report and recommendation adopted*, 2012 WL 4928904 (S.D.N.Y. Oct. 17, 2012); *May v. Warden*, No. 7-CV-2176, 2010 WL 1904327, at *3 (S.D.N.Y. May 10, 2010); *Velazquez*, 614 F. Supp. 2d at 331.

Petitioner's arguments that the Government induced perjured testimony and withheld "truthful" evidence in the grand jury proceeding are not cognizable on federal habeas review because this claim was rendered harmless by the petit jury's verdict.  In his direct appeal, Petitioner also argued that the prosecution had elicited perjurious testimony at trial.  (Pro Se Brief 18–24).  *See Kappen*, 2022 WL 939847, at *6 ("[Petitioner's] grand jury claim only survives if his petit jury claim survives.").  However, in this Petition, Petitioner has not claimed that the prosecution elicited perjurious testimony *at trial*.  Petitioner describes the medical evidence and expert testimony the government adduced at trial as "truthful" and "reliable."  (Pet. Ex. 7 at 1.)  As such, any alleged defect at the grand jury stage would have been cured by Petitioner's conviction by the petit jury.  *See Lopez*, 865 F.2d at 33 (holding that claims of impropriety before the grand jury, including a failure to develop exculpatory evidence by the prosecutor and the presentation of prejudicial evidence, were harmless under *Mechanik* because each of the alleged improprieties was cured in the trial before the petit jury, which convicted the

petitioner); *Velazquez*, 614 F. Supp. 2d at 331 (finding that a conviction by a petit jury renders

harmless any errors in the grand jury process where the petitioner alleged that the prosecutor

elicited perjurious testimony).

Moreover, even if the claim was cognizable on federal habeas review, the evidence

shows that the inconsistencies between the Victim's testimony and the medical reports were due

to the Victim's mistake and do not constitute perjury.  The Victim believed Petitioner had

stabbed him more than once because he had multiple scars, but in fact Petitioner had only

stabbed him once and the additional scars were from multiple surgeries.  (Tr. 41:5–10, 50:9–

51:15, 137:20–22, 148:2–14.)  *See United States v. Monteleone*, 257 F.3d 210, 219 (2d Cir.

2001) (holding that "incorrect testimony resulting from confusion, mistake, or faulty memory"

does not constitute perjury); *Mullins v. Graham*, No. 17-CV-2958, 2018 WL 1187401, at

*6(E.D.N.Y. Mar. 6, 2018) (explaining the victim "could have mistakenly believed that he was

shot in the stomach" from the fact that he sustained abdominal injuries and bleeding, when

medical records establish that he was not shot in the abdomen but in the back and the buttocks).

In addition, a prosecutor is not required to present exculpatory evidence to the grand jury.

*United States v. Williams*, 504 U.S. 36, 55 (1992) (since the grand jury is not required to consider

exculpatory evidence, prosecutor was not under a binding obligation to present it, and,

accordingly, a federal court lacks the power to dismiss an indictment on the ground that the

prosecutor did not present exculpatory evidence to the grand jury); *Horton v. Ercole*, 557 F.

Supp. 2d 308, 330 (N.D.N.Y., 2008) (citing cases for the principle that a prosecutor is not

required to present exculpatory evidence to the grand jury); *Jones v. Keane*, 250 F. Supp. 2d 217,

232–33 (W.D.N.Y. 2002) ("[R]equiring the prosecutor to present exculpatory evidence to the

grand jury would impose an unnecessary burden on the grand jury system." (citation omitted)).

To the extent that the medical evidence and Dr. Barrett's testimony could have supported a justification charge at the grand jury stage, the prosecution was under no obligation to advise the grand jury of such evidence.  Petitioner's argument that the government withheld "truthful" evidence from the grand jury therefore does not support habeas relief.

### ii.    Variance in proof

Petitioner contends that the People's proof at trial varied from the proof presented to the grand jury, denying him fair notice and the opportunity to prepare a viable defense.  (Pet. Ex. 7 at 1.)

Respondent argues that the difference between the Victim's testimony and medical evidence presented at trial regarding the number of times Petitioner stabbed the Victim does not constitute an impermissible variance, when the state's theory remained consistent before the grand jury and at trial, namely, that Petitioner intentionally and unjustifiably stabbed the Victim with a knife, causing serious injuries.  (Resp. to Pet. 19–20.)

"While the Fifth Amendment's grand jury indictment clause imposes certain constraints on prosecutions in federal courts, . . .  the Fifth Amendment's right to a grand jury indictment . . . has not been incorporated against the states through the Fourteenth Amendment." *LanFranco*, 313 F.3d at 118; *see also Sain*, 2021 WL 6808294, at *8 (explaining that the Fifth Amendment right to a grand jury indictment was not incorporated against the states and therefore does not apply to state criminal prosecutions); *Hirsh v. McArdle*, 74 F. Supp. 3d 525, 533 (N.D.N.Y. 2017) (same).  Nevertheless, an accused has a Sixth Amendment right to fair notice of the charges against him, which is applicable to them by operation of the due process right clause of the Fourteenth Amendment and cognizable on federal habeas review.  *Harewood v. Conway*, No. 8-CV-793, 2010 WL 5072696, at *6 (W.D.N.Y. Dec. 9, 2010); *Gaston v. Conway*, No. 6-CV-

4365, 2008 WL 501339, at *7 (S.D.N.Y. Feb. 26, 2008), *report and recommendation adopted*, 2008 WL 1830755 (S.D.N.Y. Apr. 23, 2008); *Armatullo v. Taylor*, No. 4-CV-5357, 2005 WL 2386093, at *18 (S.D.N.Y. Sept. 28, 2005) (quoting *United States ex rel. Richards v. Barlett*, No. 92-CV-2448, 1993 WL 372267, at *4 (E.D.N.Y. Sept. 9, 1993)); *see also Cole v. Arkansas*, 333 U.S. 196, 201 (1948) ("No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, . . . are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." (citation omitted)). "[P]roof at trial that varies from the indictment potentially compromises the functions of the indictment to guarantee the defendant his Sixth Amendment right to fair notice of the charges against him." *Bryant v. Artus*, No. 11-CV-1010, 2012 WL 5288771, at *8 (W.D.N.Y. Oct. 23, 2012) (citation omitted).

Assuming that this specific claim was exhausted and not procedurally defaulted,[11] the

---

[11] On direct appeal, Petitioner argued that the presentation of false evidence to the grand jury deprived him of a fair trial and violated his due process rights under the Fourteenth Amendment. (Pro Se Brief 18–24.) Petitioner did not specifically argue that the unconstitutional variance in proof denied him fair notice of the charges against him in violation of the Fourteenth Amendment. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . . , thereby alerting that court to the federal nature of the claim." (citation omitted)). If the specific claim is technically unexhausted, the Court would deem it exhausted but procedurally barred because a state court would find the claim procedurally barred as Petitioner unjustifiably failed to raise the claim on direct appeal. *See Jackson v. Conway*, 763 F.3d 115, 143–44 (2d Cir. 2014) (explaining that a federal habeas court may deem a technically unexhausted claim exhausted but procedurally defaulted where the petitioner unjustifiably failed to raise the claim on direct appeal and would be barred from raising the claim in a motion to vacate the judgment). The Court declines to decide whether the claim was technically exhausted or if the claim should instead be deemed exhausted and procedurally defaulted, because the claim fails on the merits. *See Nieblas v. Smith*, 204 F.3d 29, 31 (2d Cir. 1999) (declining to decide whether the claim was unexhausted or procedurally defaulted because the claim failed on the merits); *Coleman v. Chappius*, No. 12-CV-477, 2020 WL 6799581, at *13 n. 16 (E.D.N.Y. Nov. 19, 2020) (declining to decide whether the claim was procedurally defaulted because it failed on the merits).

prosecution's proof at the grand jury and the indictment gave Petitioner sufficient notice of the charge against him — namely that Petitioner intentionally attacked the Victim with a knife without justification. *See Parker v. Wenderlich*, No. 14-CV-5896, 2015 WL 5158476, at \*18 (E.D.N.Y. Sept. 2, 2015) ("[T]he indictment provided appropriate notice of the 'core of criminality' that the prosecution intended to prove at trial — that [the defendant] shot and killed [the victim] without any legal justification."). The variance between the medical proof at trial and the Victim's testimony before the grand jury regarding the number of stabs and wounds the Victim received,[12] did not deprive Petitioner of notice. *See Reynart v. Griffin*, No. 11-CV-748, 2017 WL 6626247, at \*7 (E.D.N.Y. Oct. 9, 2017) (finding that the petitioner had notice of the charges against him, when the indictment accused the petitioner of causing death by stab wounds only, while the evidence at trial showed both stab and incised wounds as well as the removal of a victim's breast implant). Furthermore, Petitioner was provided a copy of the medical report in advance of trial, (Tr. of Pretrial Hr'g before the Hon. James P. Sullivan ("Pretrial Tr.") 5:3–21, annexed to Resp't Letter dated June 13, 2019, Docket Entry No. 5-1), and did not articulate what alternative defense strategy he would or could have adopted at trial if he had received further advance notice of Dr. Barrett's testimony and the medical evidence, which he accepts as "truthful" and "reliable," (Pet. Ex. 7). As such, the prosecution's proof at trial neither unfairly surprised nor prejudiced Petitioner, and Petitioner was not denied fair notice or the opportunity to prepare a defense.

---

[12] The Victim testified before the grand jury, in sum and substance, that Petitioner stabbed him a "couple" of times in the abdomen, and he had "five stab wounds." (Tr. 68:20–69:4.) At trial, the Victim testified that Petitioner stabbed him four times in the abdomen, and he attributed all of his scars to Petitioner's attack. (Tr. 41:5–10, 50:9–51:15.) Dr. Barrett's testimony and the Victim's medical records, both admitted at trial, established that the Victim actually received one stab wound to his abdomen, a laceration to the left arm, and that the other abdominal scars were from surgical intervention. (Tr. 137:20–22, 148:2–14.)

### e.    Ineffective assistance of appellate counsel claim

Petitioner makes four claims of ineffective assistance of appellate counsel.  (Pet. Ex. 8.)

First, Petitioner argues that appellate counsel was ineffective in failing to argue that the State

Court denied defense counsel an opportunity to assist in formulating a response to a substantive

jury question during the deliberation stage.  (*Id.*)  Second, Petitioner contends that appellate

counsel's representation was constitutionally inadequate because counsel did not argue that the

false evidence provided to the grand jury resulted in a defective indictment and deprived him of

fair notice and right to prepare a defense.  (*Id.* at 1–2.)  Third, Petitioner, contends that appellate

counsel was ineffective in not arguing that the State violated his due process and equal protection

rights by denying his request to testify before the grand jury under N.Y.C.P.L. § 190.50, and in

alternative, that N.Y.C.P.L. §190.50 is unconstitutional as applied if the requirements barred his

request.  (*Id.* at 3.)  Finally, Petitioner argues that appellate counsel's representation was

constitutionally inadequate because counsel did not claim that the verdict was against the weight

of the evidence, even though trial counsel argued that the state had not proven intent to cause

serious physical injury, one of the elements of the first-degree assault charge.  (*Id.* at 3–4.)  In

support of this argument, Petitioner contends that the evidence shows that Petitioner stabbed the

Victim once and only after the Victim swung a pipe at Petitioner.  (*Id.* at 4.)

Respondent argues that appellate counsel provided Petitioner with constitutionally

effective representation by raising the arguments she did and also argues that appellate counsel

was not required to raise any of the claims identified by Petitioner.  (Resp. to Pet. 21.)

Respondent contends that: (1) as appellate counsel explained, there was no basis to present the

jury note claim to the Appellate Court because the Trial Court read the jury note, twice, and

Petitioner did not object to the instruction, (*id.* at 22); (2) appellate counsel was not ineffective in

declining to raise a claim that Petitioner had been improperly denied his right to testify before the grand jury because, as appellate counsel explained, Petitioner's attorney had the right to prevent Petitioner from testifying before the grand jury, (*id.* at 23); (3) appellate counsel was not ineffective for raising the grand jury misconduct claims because appellate counsel reasonably decided that the claims lacked merit, (*id.* at 23 n.17), and the Appellate Division rejected the grand jury misconduct claim Petitioner raised in his Pro Se Brief, (*id.*); and (4) appellate counsel was not required to raise a weight of evidence claim because she reasonably believed the claim was weaker than the claims she decided to raise, (*id.* at 24). In support of the last ground, Respondent contends that Petitioner could not establish a reasonable probability that this claim would have been successful before the state court because, in considering Petitioner's *coram nobis* motion, the Appellate Division found Petitioner had failed to demonstrate that he had been denied effective assistance of appellate counsel. (*Id.* at 24–25.)

"The Sixth Amendment right to counsel 'is the right to the effective assistance of counsel.'" *Buck v. Davis*, 580 U.S. 100, 118 (2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)); *see also Premo v. Moore*, 562 U.S. 115, 121–22 (2011). "A defendant who claims to have been denied effective assistance must show both that counsel performed deficiently and that counsel's deficient performance caused him prejudice." *Buck*, 580 U.S. at 118 (citing *Strickland*, 466 U.S. at 687); *see also Sexton v. Beaudreaux*, 585 U.S. ---, ---, 138 S. Ct. 2555, 2558 (2018) ("To prove ineffective assistance of counsel, a petitioner must demonstrate both deficient performance and prejudice." (citing *Strickland*, 466 U.S. at 687)). "Recognizing the 'tempt[ation] for a defendant to second-guess counsel's assistance after conviction or adverse sentence,' . . . counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Cullen*, 563

U.S. at 189 (first alteration in original) (quoting *Strickland*, 466 U.S. at 690); *see also Bell v. Cone*, 535 U.S. 685, 698 (2002) (stating that "[j]udicial scrutiny of a counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time" (alterations in original) (quoting *Strickland*, 466 U.S. at 689)); *United States v. Rosemond*, 958 F.3d 111, 121 (2d Cir. 2020) (same) (quoting *Jackson*, 763 F.3d at 153), *cert. denied*, 141 S. Ct. 1057 (Jan. 11, 2021).  While it is possible that, in certain instances, even "an isolated error" can support an ineffective assistance claim, "it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy."  *Harrington*, 562 U.S. at 111.

The same *Strickland* test applies equally to a petitioner's ineffective assistance of appellate counsel claim.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000) ("[T]he proper standard for evaluating [a petitioner's] claim that appellate counsel was ineffective . . . is that enunciated in *Strickland*[.]"); *see also Woods v. Etherton*, 578 U.S. 113, 117 (2016) (applying *Strickland* to petitioner's ineffective assistance of appellate counsel claim).  Appellate counsel has no duty to advance every non-frivolous argument.  *See Jones v. Barnes*, 463 U.S. 745, 751–54 (1983) (a petitioner does not have "a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points"); *see also Murray*, 477 U.S. at 536 ("This process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.") (internal quotation marks and citation omitted)).  To show that appellate counsel's performance was constitutionally inadequate, a petitioner must establish that appellate counsel "unreasonably failed to discover

nonfrivolous issues and to file a merits brief raising them." *Smith*, 528 U.S. at 285; *see also Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (explaining a petitioner must show that "appellate counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker").  Then, to establish prejudice, a petitioner must demonstrate "a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief" on the specific issues, "he would have prevailed on his appeal." *Smith*, 528 U.S. at 285; *see also Mayo*, 13 F.3d at 534 ("[A] petitioner must demonstrate that there was a reasonable probability that his claim would have been successful before the state's highest court." (internal quotation marks, alterations and citation omitted)).

The "highly deferential" *Strickland* standard is made "doubly" so on habeas review, as AEDPA requires deference to the state court's ruling.  *Harrington*, 562 U.S. at 105; *Premo*, 562 U.S. at 122; *Santone v. Fischer*, 689 F.3d 138, 154 (2d Cir. 2012); *see also Dunn v. Reeves*, 594 U.S. ---, ---, 141 S. Ct. 2405, 2410 (July 2, 2021) ("This analysis is 'doubly deferential' when, as here, a state court has decided that counsel performed adequately." (quoting *Burt v. Titlow*, 571 U.S. 12, 15 (2013))); *Woods*, 578 U.S. at 117 (applying the "doubly deferential" standard to the petitioner's ineffective assistance of appellate counsel claim).  Thus, on habeas review, the question is not whether counsel's actions were reasonable, but "whether there is *any reasonable argument* that counsel satisfied *Strickland*'s deferential standard." *Wilson v. Sellers*, 584 U.S. ---, ---, 138 S. Ct. 1188, 1199 n.1 (Apr. 17, 2018) (Gorsuch, J., dissenting) (quoting *Premo*, 562 U.S. at 123).  "Surmounting *Strickland*'s high bar is never an easy task." *Lee v. United States*, 582 U.S. ---, ---, 137 S. Ct. 1958, 1967 (June 23, 2017) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

The state court reasonably applied *Strickland* in considering and denying Petitioner's

*coram nobis* application.[13]  Appellate counsel presented three non-frivolous issues to the

Appellate Division.  (*See* Appellant's App. Div. Brief.)  Appellate counsel challenged the

prosecutor's remarks made in summation, arguing that the prosecutor misrepresented the facts

and law by telling the jury that Petitioner's justification defense should be rejected because

Petitioner did not sustain multiple injuries and did not tell the police that he had acted in self-

defense at the scene (when in fact Petitioner had).  (*Id.* at 21–32.)  Appellate counsel also argued

that the court erred in denying Petitioner's request for an adverse inference charge regarding

surveillance footage, and that Petitioner was unfairly penalized for rejecting a plea offer and

going to trial and given an excessive sentence.  (*Id.* at 32–45.)  Appellate counsel explained her

reasoning in declining to raise the claims Petitioner argues she should have raised in in her

affirmation to the Appellate Division submitted in response to Petitioner's *coram nobis* motion.

(Horlick Aff.)

> For the reasons explained below, as well as for the reasons the Court has already set forth

in the preceding sections regarding the underlying claims, the Court finds that the Appellate

Division's decision denying Petitioner's effective assistance of appellate counsel claim was not

unreasonable and Petitioner is not entitled to relief.

### i.   Jury note claim

> Appellate counsel was not ineffective in not raising the jury note claim because, as

appellate counsel stated and as the Court explained in Section II(b) above, this claim is without

merit.  (*Id.* ¶ 17.)  The Trial Court twice read the jury note verbatim, and Petitioner did not object

---

[13]   Petitioner's notice of appeal to the New York Court of Appeals was filed out of time. (*See* Letter dated Jan. 5, 2021, Docket Entry No. 20.)  The Court of Appeals denied the Petitioner's application without specifying whether it was doing so on the merits or on procedural grounds.  (Order Denying Leave.)  Because the Court denies this argument on the merits, the Court declines to decide whether this claim is procedurally defaulted.

to the court's instruction.  (Tr. 336:2–346:15.)  Appellate counsel is not required to make a

meritless argument.  *See Jones*, 463 U.S. at 751–53; *United States v. Noble*, 363 F. App'x 771,

773 (2d Cir. 2010).

### ii.    Right to testify before the grand jury claim

Appellate counsel was not unreasonable in declining to raise the N.Y.C.P.L. § 190.50

right to testify before a grand jury claim.  Appellate counsel explained that she decided not to

raise this argument because, under New York state law, a defendant's attorney has the authority

to decide whether the defendant should testify before the grand jury.  (Horlick Aff. ¶ 18.)

Appellate counsel also noted that Petitioner raised the underlying claim on direct appeal in his

Pro Se Brief, (*id.*), and the Appellate Division rejected it as lacking merit.   *Hunter*, 54 N.Y.S.3d

at 866.

As the Court explained in Section II(c) above and as appellate counsel argued, in New

York, a defendant has a limited statutory right to testify before the grand jury.  *Hogan*, 26

N.Y.3d at 786.  "[T]he decision of whether to have a defendant testify before a grand jury is a

strategic decision within counsel's authority to make."  *Id.* at 787.  "[Petitioner] cannot establish

ineffective assistance of appellate counsel based on counsel's decision that [petitioner] would not

testify before the grand jury." *Id.*

Appellate counsel's affirmation failed to address the fact that after Petitioner's trial

counsel waived his right to testify, but before the indictment was filed, Petitioner filed a motion

to relieve counsel and dismiss the indictment.  (Resp't Resp. to Pro Se Brief 3–4.)  Appellate

counsel's affirmation does not indicate whether this motion qualified as notice of Petitioner's

renewed intent to testify or entitled him to testify before the grand jury prior to the filing of the

indictment.  *See* N.Y.C.P.L § 190.50(5)(a) ("[A defendant] has a right to appear before [a] grand

jury as a witness in his own behalf if, prior to the filing of any indictment or any direction to file

a prosecutor's information in the matter, he serves upon the district attorney of the county a

written notice making such request and stating an address to which communications may be

sent."); *Young*, 526 N.Y.S.2d at 577 (explaining that a defendant is entitled to testify before the

grand jury so long as he notifies the State of his intention before the indictment is filed, even if

the grand jury has already voted); *see also Skrine*, 509 N.Y.S.2d at 590 (finding the indictment

should have been dismissed on this basis).   While two state courts have held that once waived, a

Petitioner cannot attempt to reinvoke the right after the grand jury voted even though the

indictment has not yet been filed, those cases would not have been binding on the Appellate

Division.  *See Trinidad*, 2009 WL 4824009, at *1–2; *Domalevski*, 598 N.Y.S.2d at 144.  Nor do

they appear to specifically address whether a defendant can renew his request to testify where

counsel has waived the right without defendant's consent and where defendant filed a motion to

relieve counsel on that basis.  Appellate counsel could have argued that Petitioner's motion

satisfied the requirements of N.Y.C.P.L § 190.50(5)(a) and that Petitioner was denied his right to

testify in violation of his statutory rights, as well as his due process and equal protection rights.

Nevertheless, applying the deferential standard of review, the Court finds that Petitioner

is not entitled to habeas relief.  *See Wilson*, 584 U.S. ---, ---, 138 S. Ct. at 1199 n.1 (Gorsuch, J.,

dissenting) (explaining that on habeas review, the question is not whether counsel's actions were

reasonable, but "whether there is *any reasonable argument* that counsel satisfied *Strickland*'s

deferential standard" (quoting *Premo*, 562 U.S. at 123)); *Mayo*, 13 F.3d at 533 (explaining that

appellate counsel is only ineffective if counsel "omit[s] significant and obvious issues while

pursuing issues that were clearly and significantly weaker").  Appellate counsel raised three non-

frivolous issues.  In addition, the state courts that have addressed whether a petitioner can

reassert the right to testify after waiving it have found a petitioner cannot do so.  Accordingly, the Court finds there is a reasonable argument that counsel satisfied Strickland's deferential standard, even though she did not raise every colorable argument, and the State Court was not unreasonable in finding that appellate counsel was not ineffective.

### iii.   Grand jury proceedings and variance in evidence claims

Nor was appellate counsel constitutionally ineffective in failing to raise the grand jury misconduct or variance claims.  Appellate counsel decided that the Victim's grand jury testimony and grand jury proceedings did not deprive Petitioner of notice of the charges against him and pointed out that the Appellate Division rejected a similar claim Petitioner raised in his Pro Se Brief.  (Horlick Aff. ¶ 19.)

### 1.   Perjury

As the Court explained above in Section II(d) considering the underlying claim, the evidence shows that the Victim's testimony about the nature of his injuries was based on mistake and did not constitute perjury.  (Tr. 41:5–10, 50:9–51:15, 137:20–22, 148:2–14); *see Monteleone*, 257 F.3d at 219 (holding that "incorrect testimony resulting from confusion, mistake, or faulty memory" does not constitute perjury).  Accordingly, counsel's failure to argue that the prosecution elicited false testimony at the grand jury and the trial, does not constitute ineffective assistance of counsel.  *Mullins*, 2018 WL 1187401, at *7 (finding the petitioner's ineffectiveness claim futile because the petitioner had not shown that the victim's testimony was perjurious rather than a mistake about his injuries).

### 2.   Variance in proof

In addition, any variance in proof did not deprive Petitioner of notice of the charges against him or of his state-created right to a grand jury indictment.

44

Under New York law, "[w]here defendant's right to fair notice of the charges or his right to have those charges preferred by the Grand Jury rather than by the prosecutor at trial has been violated, reversal is required." *People v. Hidalgo*, 41 N.Y.S.3d 47 (App. Div. 2016) (quoting *People v. Grega*, 72 N.Y.2d 489, 496 (1988)). "Although extraneous or immaterial facts in an indictment need not be proved by the state in order to sustain a conviction, when the indictment 'specifies a set of facts supporting a material element of the crime charged, the People at trial are [not] at liberty to present evidence that affirmatively disproves it.'" *Jelinek v. Costello*, 247 F. Supp. 2d 212, 270 (E.D.N.Y. Feb. 27, 2003) (quoting *Grega*, 72 N.Y.2d at 497). If the variance in proof is immaterial and does not surprise or prejudice the defendant, it does not warrant reversal of a conviction. *Id.* (citing New York cases).

The Appellate Division's finding that appellate counsel was not ineffective was not unreasonable.[14] At trial, like at the grand jury proceeding, the Victim testified that Petitioner stabbed him multiple times. (Tr. 41:5–10, 50:9–51:15, 68:20–69:4.) Although the Victim's testimony about the number of times Petitioner stabbed the Victim conflicted with other evidence at trial, the State's main theory that Petitioner had unjustifiably stabbed the Victim did not change. *Cf. Grega*, 72 N.Y.2d at 498 ("Having specified in the indictment, and later in their answer to discovery, that defendant struck the victim, thereby causing her death, the People were

---

[14] The Court also notes that Petitioner does not appear to have preserved this claim. However, in *People v. Rodriguez*, the Appellate Division modified the judgment even though the issue was unpreserved where it found that the proof of an essential element presented at trial contradicted the factual allegation in the indictment and, as a result, there was insufficient evidence to prove the crime without constructive amendment of the indictment. 559 N.Y.S.2d 725 (App. Div. 1990) (citations omitted) ("[T]he [prosecution's] presentation of proof at trial to support the $250 damage requirement of [the statute], the damage to the ignition and the door lock, contradicted the factual allegation contained in the indictment, the damage [only] to the door.").

not then free to present proof at trial that virtually ruled out that theory as the cause of death and substituted another one."). In addition, the evidence at trial did not "affirmatively disprove[]" the allegations in the indictment.[15] *Jelinek*, 247 F. Supp. 2d at 270 (quoting *Grega*, 72 N.Y.2d at 497). (*See* Indictment, *Hunter v. City of New York et al*, No. 12-CV-6139 (E.D.N.Y. Mar. 19, 2021) at 2.) Finally, Petitioner was not surprised or prejudiced by the medical reports and expert testimony admitted at trial, which indicated that Petitioner only stabbed the Victim once or twice, as the reports were provided to him prior to trial. (Pretrial Tr. 5:3–21.) *Cf. Grega*, 72 N.Y.2d at 499 (where the conduct alleged in the indictment was consistent with the defendant's statements and grand jury testimony that he had struck the victim in self-defense and defendant was unprepared at trial to meet a case of deliberate strangulation, the prejudice from the variance was manifest). Accordingly, the Appellate Division's finding that appellate counsel was not ineffective was not unreasonable.

### iv. Weight of evidence claim

Finally, appellate counsel was not ineffective in failing to make a N.Y.C.P.L. § 470.15(5) weight of evidence challenge.

In New York, "[u]pon defendant's request, the Appellate Division must conduct a weight of the evidence review" and "a defendant will be given one appellate review of adverse factual findings." *People v. Danielson*, 9 N.Y.3d 342, 348 (2007) (citations omitted); *see also People v. Bailey*, 942 N.Y.S.2d 165, 167 (App. Div. 2012) (same); N.Y.C.P.L. § 470.15(5) (allowing for

---

[15] The indictment alleged that "the Defendant, on or about April 25, 2011, in the county of Kings, with intent to cause serious physical injury to another person, caused such injury to such person . . . namely: [the Victim], by means of a deadly weapon or a dangerous instrument, namely: a knife." (Indictment, *Hunter v. City of New York et al*, No. 12-CV-6139 (E.D.N.Y. Mar. 19, 2021) at 2.) The indictment did not specify the number of times that Petitioner stabbed the Victim and the evidence at trial did not contradict the allegations in the indictment.

reversal or modification of judgment where the intermediate appellate court "determin[es] that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence").  In considering such a challenge, the court must (1) "determine whether an acquittal would not have been unreasonable" and, if so, (2) "weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions" and "decide[] whether the jury was justified in finding defendant guilty beyond a reasonable doubt."  *Danielson*, 9 N.Y.3d at 348 (citation omitted); *Bailey*, 942 N.Y.S.2d at 167 (same).

For a conviction of assault in the first degree, the prosecution must prove that the defendant, "[w]ith intent to cause serious physical injury to another person, . . . cause[d] such injury to such person or to a third person by means of . . . a dangerous instrument."  N.Y.P.L.  § 120.10(1).  "Regarding the defense of justification, unless the defendant is the initial aggressor, he or she may 'use physical force upon another person when and to the extent he or she reasonably believes such to be necessary to defend himself, herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful physical force by such other person.'"  *People v. Williams*, 77 N.Y.S.3d 216 (App. Div. 2018) (quoting N.Y.P.L § 35.15(1)).  "'[A defendant] may not use deadly physical force upon another person' unless he or she 'reasonably believes that such other person is using or about to use deadly physical force.'"  *Id.* (quoting N.Y.P.L. § 35.15(2)(a)).

Appellate counsel explained that she considered the argument and determined that other arguments were stronger.  (Horlick Aff. ¶ 20.)  She used the discrepancies in evidence to instead argue that the purported errors were not harmless.  (*Id.*)

Appellate counsel's decision was not unreasonable.  There was no dispute that Petitioner

47

stabbed the Victim.  The sole question was whether he stabbed him in self-defense.  Although the Victim approached Petitioner's vehicle with a pipe, intending to hit the windshield, and eventually swung the pipe at Petitioner, (Tr. 34:19–35:7, 37:4–38:15, 39:19–40:19), the jury could have reasonably found that Petitioner was the initial aggressor.  The Victim testified that Petitioner threatened him, (*id.* at 26:25–29:5), broke the windshield of his car, (*id.* at 29:14–31:18), lured him to the intersection where the offense occurred, (*id.* at 32:1–16), and attacked him with a knife, (*id.* at 37:22–40:19).  Davis corroborated the Victim's testimony, undermining Petitioner's theory that Petitioner stabbed the Victim in self-defense.  Specifically, Davis testified that before the stabbing Petitioner told him he "was going to get [the Victim]", (*id.* at 111:6–15), and afterwards told him he "had to do it," (*id.* at 114:15–18.)  The Court defers to the jury's credibility determinations and finds that the jury could have reasonably found that although the Victim approached Petitioner's car with a pipe, Petitioner attacked him first and therefore was not entitled to the justification defense.  In addition, even if Petitioner had a colorable weight of the evidence claim, appellate counsel was not required to raise it.  *See Jones*, 463 U.S. at 751–52 ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").  Petitioner has not demonstrated a reasonable probability that such a claim would have been successful.  The Court finds that the Appellate Division did not unreasonably apply clearly established law in finding that Petitioner "failed to establish that he was denied the effective assistance of appellate counsel," *Hunter*, 122 N.Y.S.3d at 564 (citation omitted).

### f.   Certificate of appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a) Gov'g Sec. 2254 Cases in the U.S. Dist. Cts.  Having dismissed the petition for a writ of habeas corpus, the Court issues a certificate of appealability on all matters discussed in this opinion, except for the claims pertaining to the Trial Court's handling of the jury note.

The Court must issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This means that a habeas petitioner must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

"This threshold question should be decided without 'full consideration of the factual or legal bases adduced in support of the claims.'"  *Buck*, 580 U.S. at 115 (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)).  "Obtaining a certificate of appealability 'does not require a showing that the appeal will succeed,' and '[courts] should not decline the application . . . merely because [they] believe[] the applicant will not demonstrate an entitlement to relief.'"  *Welch v. United States*, 578 U.S. 120, 127 (2016) (quoting *Miller-El*, 537 U.S. at 337).  In fact, a certificate of appealability may issue even if "every jurist of reason might agree, after the [certificate of appealability] has been granted and the case has received full consideration, that petitioner will not prevail."  *Miller-El*, 537 U.S. at 338.

The Court grants a certificate of appealability on all issues raised in the petition, except for the claims pertaining to the Trial Court's handling of the jury note, which reasonable jurists

could not debate. While the Court expects that no other judicial officer would grant *habeas* relief in this case, all other claims raised are at least debatable, which is all that is required for a certificate of appealability to issue.

### III. Conclusion

For the foregoing reasons, the Court denies the petition for a writ of habeas corpus. The Court grants a certificate of appealability on all of Petitioner's claims, except for those relating to the Trial Court's handling of the jury note.

Dated: May 1, 2023
        Brooklyn, New York

                        SO ORDERED:


                        ____/s/ MKB_____
                        MARGO K. BRODIE
                        United States District Judge